## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| AMANDA GAIL GREEN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:17-cv-01094-JEO |
| NANCY BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiff Amanda Gail Green brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her supplemental security income ("SSI") benefits. (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), FED. R. CIV. P. 73(a). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI benefits in April 2014, alleging she became disabled beginning May 1, 2011. It was initially denied by an administrative law judge ("ALJ"). The Appeals Council ("AC") denied Plaintiff's request for review. (R. 1).[2]

## II. FACTS

Plaintiff was 35 years old at the time of the ALJ's decision. (R. 29, 134). She previously worked as a cook, a dishwasher, and a server. (R. 40, 166-67). She alleges disability due to connective tissue disease, carpal tunnel syndrom in both writs, fibromyalgia, lupus, bulging disc and protrusion, tendinitis, depression, osteoarthritis, Raynaud's disease, degenerative disc disease, anxiety, and depression. (R. 165).

Following Plaintiff's hearing, the ALJ found that she had the medically determinable severe impairments of cervical and lumbar degnerative disc disease. (R. 22). He also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (R. at 24). He further found that Plaintiff had the residual functional capacity ("RFC") to

---

[2]References herein to "R. __" are to the administrative record found at Docs. 8-1 through 8-10 in the court's record.

perform light work with limitations. (R. 25-27). He determined that Plaintiff had no past relevant work. (R. 28). He further found that based on Plaintiff's age, education, work experience, and RFC, and the testimony of a vocational expert ("VE"), Plaintiff could work as an assembler, inspector/tester, and cashier. (R. 28-29). The ALJ concluded that Plaintiff was not disabled. (R. 29).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015; *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no

presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. § 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[3] The plaintiff bears the burden of proving that she was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 416.920(a). The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff asserts that the ALJ erred in that (1) he failed to properly assess the medical opinion of Dr. Danny Sailsbury[4] and (2) his findings are not supported by

---

[3] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[4] Dr. Sailsbury's name oftentimes appears as "Salisbury" in the record. The correct spelling is Sailsbury. (*See* R. 466).

5

the evidence because the VE's testimony is premised on an incomplete hypothetical. (R. 9-12). The Commissioner responds that substantial evidence supports the ALJ's determination.

### A. Medical Opinion of Dr. Sailsbury

As noted above, Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920(a); *Moore,* 405 F.3d at 1211; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Specifically, Plaintiff must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged symptoms or that the medical condition could be reasonably expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 419.929(a); *Dyer v. Barnhart*, 359 F.3d 1206, 1210 (11th Cir. 2005); *Wilson*, 284 F.3d at 1225-26; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). In analyzing the evidence, the focus is on how an impairment affects Plaintiff's ability to work, and not on the impairment itself. *See* 20 C.F.R. § 416.929(c)(1); *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (severity of impairments must be measured in terms of their effect on the ability to work, not from purely medical standards of bodily perfection or normality).

The available medical records show that on October 7, 2010, Plaintiff was

treated for moderate lower back pain that was radiating down both legs. (R. 206).
An October 18, 2010 MRI of her spine showed right paracentral and right sided posterior disc herniation at L4-5 with right-sided nerve impingement and mild right paracentral posterior disc bulging without nerve root impingement at L5-S1.[5] (R. 237).

Plaintiff was seen by Dr. Morris Scherlis at Tennessee Valley Pain Consultants for pain management from December 2012 through October 2013. Plaintiff was diagnosed with cervical and lumbar degenerative disc disease and cervical and lumbar radiculopathy. She reported pain levels between four and eight on a ten-point scale. She received a series of lumbar facet injections and medial branch nerve block procedures. (R. 296, 306, 308, 319, 327, 329). She responded well at times, reporting 80 percent pain relief from the injections. (R. 288, 314, 317). However, at other times she reported that while she was doing well on her left side, "the right side didn't work as well and is hurting her quite a bit." (R. 292, 294 (October 2013); *see also* R. 293 ("appears to be in moderate discomfort") & R. 305 (July 2013) ("the last esi [(epidural steroid injection)] helped for a week or so with her pain but the leg pain returned[;] recommend more

---

[5]Plaintiff had another MRI on March 27, 2013, for follow-up on C1 meningiona. (R. 242). Dr. Rhett B. Murray reported this area was "neurologically intact, including the C2 dermatomes" and there was no change in the 5 to 6 mm mass near the C1 ring. (R. 241). He also noted that Plaintiff's reflexes and strength were good. (*Id.*)

exercise"); R. 323 ("the rfc of the lsf didn't help much more than 25%")). She also stated that the medications worked well without side effects. (R. 295; *see also* R. 317 ("Pt denies problems, questions, or concerns regarding her medications")).[6]

Dr. Sailsbury at Holistic Pain Management began seeing Plaintiff in April 2014 for chronic lower back pain. (R. 404-06). The medical records reflect that he saw her continuously through the early part of 2016. On March 22, 2016, Dr. Sailsbury prepared a Medical Source Statement. He listed Plaintiff's impairments as including post laminectomy syndrome, cervicalgia and cervical and lumbar radiculopathy. (R. 465). He opined that Plaintiff would be likely to miss five or more days of work each month as a result of her impairments. She could not stoop or climb and could infrequently sit, stand, and walk. She could occasionally lift up to 10 pounds. She could not use her hands for fine or gross manipulation on a

---

[6]There is also evidence in the record where Plaintiff complained that the medication made her nauseated. (R. 289, 311).

The court also notes that Plaintiff saw Dr. Kun Chen from May through October 2013. She was referred to him for an evaluation of various medical symptoms and conditions, including fatigue, weakness, and diffuse body pain. (R. 280). Dr. Chen noted that Plaintiff's musculoskeletal examinations were unremarkable and she showed no evidence of edema of the extremities or synovitis of the hands, wrists, elbows, or knees. (R. 26, 265, 273, 280). She also had normal grip strength and good hip flexion. (*Id.*) Dr. Chen diagnosed Plaintiff as having possible fibromyalgia. (R. 265).

full-time basis, and could infrequently raise either arm over shoulder level. (*Id*.) He also opined that Plaintiff had severe pain as a result of her condition, and would be expected to be off task for up to 60 percent of the work day. Dr. Sailsbury further stated that Plaintiff would need to elevate her legs above her waist three to four times each day for an hour at a time, that she would need to lie down for an hour several times each day, and that she would need extra unscheduled breaks during a typical work day. (R. 466). Finally, he opined that Plaintiff had side effects from the Xanax she was taking, which would interfere with her ability to focus and concentrate. (*Id*.)

> In evaluating Dr. Sailsbury's Medical Source Statement, the ALJ stated:
>
> As for the opinion evidence, little weight is given to Dr. Salisbury's [sic] medical source statement, as it is a check-mark type form prepared by the claimant's attorney in contemplation of the disability hearing that is not part of the treatment records and not consistent with the physician's contemporaneous treatment records. While he assessed the claimant as having severe fine/gross manipulative limitations, significant medication side effects, and indicated the claimant could sit, stand, walk and raise the upper extremities over shoulder level on an infrequent basis and would be unable to sustain an 8-hour workday, his treatment notes actually show that throughout 2015 and in January 2016, the claimant consistently reported that her chronic pain was responding well to medication without side effects and that she had a moderate to average physical activity level.
>
> Although the evidence contains complaints of chronic back and neck pain, records from Dr. Salisbury [sic] and other treating sources contain no significant complaint from the claimant that asserted an inability to sit, stand, walk, lift and carry. While he opined that the

9

claimant would be off task 60 percent of the day and would miss 5 or more days of work per month, the Dictionary of Occupational Titles (DOT) contains no definition of the term "off task" and his opinion regarding more than 5 absences from work per month is not supported by the frequency of his treatment records, the complaints noted in those records, any vocational assessment from an individual with expertise in vocational matters, or the claimant's testimony at the hearing (Exhibits 4F, 5F, 6F, 7F, 8F, and 9F).

(R. 27). Plaintiff asserts that the ALJ's characterization of Dr. Sailsbury's treatment record for her is not accurate. (Doc. 11 at 10). Specifically, she states:

> Contrary to the ALJ's assertions, Dr. Sailsbury's contemporaneous treatment notes show Plaintiff had constant, burning, stabbing pain in her lower back, particularly when trying to increase her physical activity, perform postural maneuvers such as bending, or stay in a sitting or standing position for extended periods. Tr. 403-64. The ALJ asserted the treatment notes showed Plaintiff engaging in a "moderate to average physical activity level," but did not provide citations to any specific treatment note showing this level of activity. The treatment notes actually show Plaintiff's pain worsening every time she tried to be more physically active. Plaintiff's difficulties with standing, walking, lifting, and carrying are well documented in Dr. Sailsbury's treatment notes. The ALJ erred here by improperly substituting his own lay opinion for that of Plaintiff's treating medical professional. The ALJ asserted the treatment notes did not support Dr. Sailsbury's conclusions, but did not cite any specific portions of those treatment notes which were actually inconsistent with any of the limitations Dr. Sailsbury assessed. A comparison of the treatment notes at Tr. 403-64 with Dr. Sailsbury's formal medical source statement at Tr. 465-66 reveals that the limitations Dr. Sailsbury described are entirely consistent with Plaintiff's treatment history. The rest of the medical evidence, including the MRI scans from 2010 and 2012 showing bulging discs resulting in foraminal stenosis in Plaintiff's lumbar spine (Tr. 237, 395), provides further support.

(*Id*. at 10-11). The Commissioner argues that the ALJ assigned proper weight to

Dr. Sailsbury's opinion. (Doc. 14 at 7). In support of this position, the Commissioner states that Dr. Sailsbury's treatment notes from January 2015 through January 2016 show that Plaintiff consistently reported that her chronic pain was responding well to medication without side effects and that she had a moderate to average physical activity level. (Doc. 14 at 9 (citing R. 417, 419, 422, 424, 426, 428, 432, 434, 444, 446, 448, 461)). The Commissioner further states that "although the evidence contains complaints of chronic back and neck pain, records from Dr. [Sailsbury] and other treating sources contain no significant complaint from Plaintiff [of] an inability to sit, stand, walk, lift, and carry." (*Id*. at 9 (citing R. 406-64)). Finally, the Commissioner states that Dr. Sailsbury's treatment records do not support his opinion that Plaintiff will experience more than five absences from work per month. (*Id*. at 10 (citing R. 27, 406-63)). Thus, the Commissioner concludes that substantial evidence supports the ALJ assessment of Dr. Sailsbury's opinion and the RFC determination. (*Id*.)

The court has examined each of Dr. Sailsbury's treatment notes and finds as follows: (1) Plaintiff's pain levels varied from a low of "4" to a high of "10" with most being recorded at a moderate level of "6";[7] (2) Plaintiff consistently

---

[7]More specifically, from July 15, 2014, through January 26, 2016, Plaintiff reported a pain level of "4" two weeks (July 15, 2014 (R. 452) and December 1, 2015 (R. 417)); a level of "5" once (August 12, 2014 (R. 450)); a level of "6" fifteen weeks (September 11, 2014, October 7, 2014, November 4, 2014, December 2, 2014, February 24, 2015, March 24, 2015, April 21,

11

complained that her back pain was chronic, constant, or stabbing and increased with or was caused by activity (R. 417, 419, 420, 422, 424, 426, 432, 434, 436, 438, 440, 442, 444, 446, 448, 450, 452, 461, 463); (3) Plaintiff's physical activity was varied, including average, fair, limited, "ok," "forced," moderate, low, and very low (*id*.); (4) Plaintiff's memory and concentration were good;[8] and (5) Plaintiff's medications generally worked well without side effects.[9] Thus, the court's observations and conclusions do not exactly fit with either party's contentions. The court finds that the ALJ's characterization of Plaintiff's activity as "moderate"[10] is not particularly appropriate. That term is found only once in the foregoing treatment records. The most frequently used terms are "limited,"

---

2015, May 19, 2015, June 16, 2015, July 14, 2015, August 11, 2015, September 8, 2015, October 5, 2015, December 29, 2015 & January 26, 2016 (R. 420, 422, 424, 426, 428, 430, 432, 434, 436, 442, 444, 446, 448, 461, 463)); a level of "8" twice (January 6, 2015 & November 11, 2015 (R. 419, 440)); and a level "10" once (January 17, 2015 (R. 438)).

[8]There were 21 entries in the records concerning concentration and memory. Fifteen entries indicated they were "good," five indicated they were "ok," and one was left blank. (R. 417, 419, 420, 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 442, 444, 446, 448, 450, 452, 461, 463).

[9]Plaintiff reported on one occasion that her medication was not effective, except to take the "edge off" the pain (R. 438). This report was on the same date that she was experiencing pain at a level of "10".. She also stated on another occasion that the medication caused her to have constipation. (R. 434).

[10]"Moderate" is defined, in pertinent part, as "avoiding extremes of behavior or expression," "tending toward the mean or average amount or dimension," or "having average or less than average quality." https://www.merriam-webster.com/dictionary/moderate (last visited June 21, 2018).

"average," and "fair."[11] Additionally, the ALJ's analysis does not take into consideration Plaintiff's consistent refrain that sitting, bending, walking, standing, being in a single position too long (over ten minutes), and other activity caused or increased her pain. (R. 417, 419, 420, 422, 424, 426, 428, 430, 432, 434, 436, 438, 440, 442, 444, 446, 448, 450, 452).

Having noted the deficiencies in the ALJ's analysis, the court also finds that the record does not support Dr. Sailsbury's opinion that Plaintiff would be "off task 60 percent of the day," that she would miss five or more days of work per month, that she would need to elevate her feet above her waist three to four times a day due to pain, fatigue and medication side effects, and that she would need to lie down three to four times daily for one hour at a time. (R. 26, 465-66). To the contrary, as noted above, Plaintiff's concentration and memory are good; overall, she does well with her medication; and her average pain levels are in the moderate category. Additionally, the court notes that the ALJ correctly found that Plaintiff testified that she could care for her children, load the dishwasher, do laundry, grocery shop, and drive. (R. 25, 41-43, 50-51).

In sum, the court finds that while the record documents Plaintiff's

---

[11]The most consistently used term was "limited." (R. 422, 438, 442, 444, 446, 448, 450, 452). The next most commonly used terms were "average" and "fair" – three times each (R. 417, 419, 420, 428, 461, 463). She did complain twice that her activity level was low due to pain. (R. 436, 440).

complaints of chronic back pain, it also supports the ALJ's finding that Plaintiff is not as limited as she alleges and his RFC determination that she can perform light work with various limitations. Plaintiff's challenges do not adequately refute the ALJ's determination that she is not disabled.

## B. Incomplete Hypothetical

Plaintiff next argues that the VE's testimony is flawed in that it was premised on an incomplete hypothetical question. (Doc. 11 at 11). Specifically, she argues that the hypothetical posed by the ALJ in this case "failed to include Plaintiff's limitations in lifting, sitting, standing, walking, carrying, using her hands, completing a normal work day or work week without interruption from her symptoms, or maintaining regular attendance." (*Id*. at 12). The Commissioner responds that the ALJ's hypothetical to the VE "contained all Plaintiff's credible, supported limitations, and substantial evidence from the record supports the ALJ's determination." (Doc. 14 at 11). The court agrees.

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). "If the ALJ presents the vocational expert with incomplete hypothetical questions, the vocational expert's testimony will not constitute substantial evidence." *Jacobs v.*

*Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011)).

The hypothetical posed to the VE by the ALJ included references to an individual who could perform light work without climbing ladders, ropes, or scaffolds; without being around work hazards; without frequently climbing ramps or stairs, balancing, stooping, kneeling, crouching or crawling; and without doing any commercial driving. (R. 56). The court finds this question to be reflective of Plaintiff's abilities and limitations as determined by the ALJ. Plaintiff's medical records demonstrate that she generally responded somewhat favorably to her medication and her injections; she had moderate pain levels as a rule; and she had a reasonable amount of physical activity and mobility consistent with the ALJ's RFC finding. Because the court finds that Plaintiff's purported needs for numerous breaks, being off task 60 percent of the workday, and more than five days off per month due to her situation are not supported by substantial evidence, the addition of these elements to the hypothetical was unnecessary. Plaintiff's claim is therefore without merit.

In sum, the court cannot find under the record that Plaintiff is entitled to any relief. Substantial evidence supports the ALJ's decision.

## VI.  CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed.  An appropriate order will be entered separately.

**DONE,** this the 25th day of June, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge